IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| ROBERTA BUCASAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17-CV-3772 |
| | ) | |
| CITY OF CHICAGO, | ) | |
| CHICAGO POLICE OFFICER | ) | |
| JAMES SCOTT (Star No. 14869), | ) | |
| | ) | |
| Defendant. | ) | |

## FIRST AMENDED COMPLAINT

NOW COMES Plaintiff, ROBERTA BUCASAS ("Plaintiff" or "Plaintiff Bucasas"), by and through her attorneys, Barney & Hourihane, LLP and the Law Office of Timothy J. Fiscella, and complaining of Defendants, CITY OF CHICAGO ("City") and CHICAGO POLICE OFFICER JAMES SCOTT (Star No. 14869) ("Defendant Officer" or "Defendant Officer James Scott"), states as follows:

### INTRODUCTION

1. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a), the Constitution of the United States, and this Court's supplemental jurisdiction powers.

3. Venue is proper under 28 U.S.C. § 1391(b). On information and belief, all parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within the district.

## PARTIES

4. Plaintiff Roberta Bucasas is the mother of a seventeen-year old minor child (referred to herein as "N.B."). Plaintiff is also currently a student at Northwestern College and resides in Chicago, Illinois, within the Northern District of Illinois, Eastern Division.

5. On information and belief, Defendant Officer James Scott is, and was at all times complained of herein, employed by the City of Chicago as a police officer.

6. The City of Chicago is a duly incorporated municipal corporation within the Northern District of Illinois and is the employer and principal of Defendant Officer James Scott.

7. At all times material to this First Amended Complaint, Defendant Officer James Scott was acting within the scope of his employment and under color of state law, ordinance, and/or regulation, statutes, custom, and usage of the City of Chicago.

## BACKGROUND

8. On or about November 25, 2016, Plaintiff was present with her daughter at their residence, the first floor, rear unit of a two-story multi-unit building located on the 500 block of West 43rd Place.

9. The "front" door to Plaintiff's apartment is located approximately half-way down the east side of the building and is accessed by a narrow sidewalk or "gangway." The front of the building faces south.

10. One must travel down a side "gangway" and pass through two separate chain-linked gates to access Plaintiff's door on the east side of the building.

11. At approximately 11:30 A.M. on November 25, 2016, Plaintiff accidentally tripped the alarm to her apartment while letting her dog outside.

12. Two Chicago Police Officers were dispatched to Plaintiff's residence in response to Plaintiff's alarm and arrived within minutes in a marked Chicago police vehicle. Plaintiff now knows one of these police officers to be Defendant Officer James Scott.

13. Defendant Officer was wearing dark slacks with a dark blue hoodie and did not appear to have his police badge, or any other identification, displayed.

14. Defendant Officer's partner was wearing his Chicago Police Department issued uniform with his police badge displayed.

15. Both officers arrived in a marked Chicago police vehicle and exited the vehicle to approach Plaintiff's building.

16. Noticing the arrival of the officers, Plaintiff stepped onto the landing outside of her door so as to make herself available to the officers.

17. Defendant Officer's partner proceeded to the front unit of the first floor and spoke with Plaintiff's front neighbor who related that the rear unit was the unit with the tripped alarm.

18. Defendant Officer proceeded to the gangway on the east side of the building, which leads to Plaintiff's rear unit, and, while standing at the frontmost gate, asked Plaintiff from a distance if everything was alright.

19. Plaintiff responded that she accidentally tripped the alarm, that everything was fine, and that there was no emergency.

20. Defendant Officer and his partner eventually concluded that there was no emergency and left the residence in their police vehicle.

21. Approximately one hour later, Defendant Officer returned to Plaintiff's residence in a marked Chicago police vehicle, wearing the same clothes as when he initially responded to Plaintiff's residence.

22. Plaintiff's front neighbor - the same neighbor who had spoken with Defendant Officer's partner - heard the police vehicle pull up and park and saw Defendant Officer exit his vehicle and walk towards the gangway leading to Plaintiff's door.

23. Defendant Officer walked down the side gangway and through two closed chain-linked gates, and then proceeded up Plaintiff's stairs and onto the landing leading to her door.

24. Defendant Officer knocked on Plaintiff's door.

25. Plaintiff opened the door and greeted Defendant Officer, whom she recognized as the officer she spoke with approximately one hour earlier.

26. Without asking for permission, and without Plaintiff's consent, Defendant Officer walked passed Plaintiff and into the living room of Plaintiff's residence.

27. Plaintiff had committed no crimes or taken any other action which would justify Defendant Officer's entry into her home.

28. Plaintiff's understanding and belief was that Defendant Officer had returned to the home on police business to further investigate the tripped alarm.

29. After stating that he attempted to contact Plaintiff prior to returning to her home, Defendant Officer approached to within one-foot of Plaintiff and told her that she needed a massage.

30. Defendant Officer then grabbed Plaintiff by the shoulders, turned her around, and began massaging her shoulders.

31. Plaintiff immediately moved away from Defendant Officer, attempted to push his hands off of her shoulders, and said something to the effect of, "Whoa whoa, what are you doing?"

32. Stunned, Plaintiff turned back around to face Defendant Officer.

33. Defendant Officer then repeated that Plaintiff needed a massage, and grabbed Plaintiff by the shoulders and pulled her towards his body.

34. Defendant Officer then pressed Plaintiff against his body, said something to the effect of, "We can make it a quickie," and began groping Plaintiff's back and shoulders while holding Plaintiff tightly against his body.

35. At this time, Plaintiff attempted to push Defendant Officer away from her and told him to stop.

36. During this encounter, Plaintiff's daughter, N.B., was sitting in her bedroom, which is just off of the living room and only feet from where Plaintiff and Defendant Officer were standing.

37. Initially, N.B. heard a male voice talking about a massage, but believed the voice was coming from the television in the living room.

38. After Defendant Officer asked Plaintiff for a "quickie," N.B. realized that there was a man in the house with her mother and that something unusual was going on.

39. Believing that Plaintiff was in danger, N.B. kicked her bedroom door loudly in an attempt to startle whomever was in the home.

40. Upon hearing the loud bang, Defendant Officer asked Plaintiff if someone else was in the home.

41. Plaintiff told Defendant Officer that her daughter was home.

42. Defendant Officer asked Plaintiff how old her daughter was and Plaintiff responded that her daughter was seventeen years old.

43. Defendant Officer then immediately walked out of the residence without saying a word, entered his police vehicle, and drove off.

44. Plaintiff called 9-1-1 and reported the incident to a supervisor that same day.

## COUNT 1
### 42 U.S.C. § 1983 Claim: Illegal Entry/Search
### (Plaintiff against Defendant Officer James Scott)

45. Plaintiff re-alleges each of the preceding paragraphs as if fully restated herein.

46. Defendant Officer's entry into Plaintiff's residence was without Plaintiff's consent or the consent of any other person with authority.

47. Further, at all times relevant to this First Amended Complaint, no arrest or search warrant existed which would authorize Defendant Officer to enter into Plaintiff's residence.

48. Defendant Officer lacked probable cause, reasonable suspicion, or any other legal justification that would authorize him to enter Plaintiff's residence.

49. Defendant Officer's entry in Plaintiff's residence was unreasonable, willful, wanton, malicious, and done with reckless indifference to, and in violation of, Plaintiff's rights as secured by the Fourth Amendment and Fourteenth Amendments to the United States Constitution, and hence in violation of 42 U.S.C. § 1983.

50. The constitutional violation described herein was a direct and proximate result of Defendant Officer's actions, and Plaintiff suffered injuries as a result, including pain, suffering, and emotional distress.

## COUNT 2
### 42 U.S.C. § 1983 Claim: Illegal Seizure
### (Plaintiff against Defendant Officer James Scott)

51. Plaintiff re-alleges each of the preceding paragraphs as if fully restated herein.

52. In taking the actions described above, Defendant Officer meaningfully interfered with Plaintiff's freedom of movement.

53. Defendant Officer's actions interfering with Plaintiff's freedom of movement were done without probable cause, reasonable suspicion, or any other legal justification.

54. Defendant Officer's actions were unreasonable, willful, wanton, malicious, and were undertaken with reckless indifference to, and in violation of, Plaintiff's rights as secured by the Fourth Amendment and Fourteenth Amendments to the United States Constitution, and hence in violation of 42 U.S.C. § 1983.

55. The constitutional violation described herein was a direct and proximate result of Defendant Officer's actions, and Plaintiff suffered injuries as a result of those actions, including pain, suffering, and emotional distress.

## COUNT 3
### Illinois State Law Claim: Assault & Battery
### (Plaintiff against Defendant Officer James Scott)

56. Plaintiff re-alleges each of the preceding paragraphs as if fully restated herein.

57. As described more fully in the preceding paragraphs, Defendant

Officer knowingly and intentionally groped and otherwise touched Plaintiff without Plaintiff's consent or any other legal justification.

58. Defendant Officer's actions put Plaintiff in reasonable apprehension that she would be subjected to bodily harm and/or other physical contact of an insulting or provoking nature.

59. Defendant Officer's conduct was done knowingly, intentionally, and with malice, and at all times described herein Defendant Officer was acting without legal authority.

60. As a result of Defendant Officer's conduct, Plaintiff sustained injuries, including pain, suffering, and emotional distress.

61. As described above, the Defendant Officer's conduct was undertaken within the scope of his employment such that his employer, City of Chicago, is liable for his actions.

## COUNT 4
### Illinois State Law Claim: False Imprisonment
### (Plaintiff against Defendant Officer James Scott)

62. Plaintiff re-alleges each of the preceding paragraphs as if fully restated herein.

63. The actions taken by Defendant Officer's as described above restrained Plaintiff's freedom of movement.

64. Defendant Officer's actions in restraining Plaintiff were done without reasonable grounds, reasonable suspicion, probable cause, or any other legal justification.

65. The actions of Defendant Officer were undertaken willfully, wantonly, maliciously, and with reckless indifference to Plaintiff's rights.

66. As described above, the Defendant Officer's conduct was undertaken within the scope of his employment such that his employer, City of Chicago, is liable for his actions.

### *Respondeat Superior*

67. Plaintiff re-alleges each of the preceding paragraphs as if fully restated herein.

68. In committing the acts alleged in the preceding paragraphs, Defendant Officer was acting as a member and agent of the City of Chicago, and at all times relevant to this First Amended Complaint was acting within the scope of his employment as a member of the Chicago Police Department.

69. Defendant City of Chicago is liable as principal for all torts committed by its agents.

### Indemnification

70. Plaintiff re-alleges each of the preceding paragraphs as if fully restated herein.

71. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

72. Defendant Officer is an employee of the Chicago Police Department, and at all times relevant to this First Amended Complaint was acting within the

scope of his employment as an employee of the Chicago Police Department.

WHEREFORE, Plaintiff, ROBERTA BUCASAS, respectfully request that this Court enter judgment in her favor and against Defendants, CITY OF CHICAGO and DEFENDANT OFFICER JAMES SCOTT, awarding compensatory damages and attorneys' fees, along with punitive damages against DEFENDANT JAMES SCOTT in his individual capacity, as well as any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff, ROBERTA BUCASAS, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully Submitted,

s/ *Ian Barney*
Attorney for Plaintiff

IAN M. BARNEY
Barney & Hourihane, LLP
874 Green Bay Road, Suite 320
Winnetka, Illinois 60093
Tel: (312) 854-0906

s/ *Timothy J. Fiscella*
Attorney for Plaintiff

TIMOTHY J. FISCELLA
Law Office of Timothy J. Fiscella
201 E. Ogden Ave., Suite 215
Hinsdale, Illinois 60521
Tel: (630) 708-6690

## CERTIFICATE OF SERVICE

I, Ian M. Barney, hereby certify that on July 27, 2017, I electronically filed the foregoing **First Amended Complaint** with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, by using the CM/ECF system. I certify that Defendant City of Chicago is a registered CM/ECF users and that service will be accomplished by the CM/ECF system. Service on Defendant James Scott will be accomplished in accordance with Federal Rule of Civil Procedure 4(c).

s/ *Ian M. Barney*

Ian M. Barney
Barney & Hourihane, LLP
874 Green Bay Road, Suite 320
Winnetka, IL 60093
Tel: (312) 854-0906